UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMANUEL D. FAIR,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY, a political subdivision of the State of Washington; CITY OF REDMOND, a municipal entity and political subdivision of the State of Washington; BRIAN COATS, in his personal capacity; JEFF BAIRD, in his personal capacity,<br><br>Defendants. | CASE NO. 2:21-cv-01706-JHC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

# I

## INTRODUCTION

This matter comes before the Court on Defendant King County's FRCP 12(b)(6) Motion to Dismiss. Dkt. # 124. The motion seeks dismissal of Plaintiff Emanuel Fair's *Monell* claims against the County. *Id.* For the reasons below, the Court GRANTS in part and DENIES in part the motion. And the Court GRANTS Fair leave to file a third amended complaint.

/

/

/

## II

### BACKGROUND

The factual background in this section derives from Fair's allegations in the Second Amended Complaint (SAC), *see* Dkt. # 120, which the Court accepts as true on a Rule 12(b)(6) motion to dismiss.[1]

In 2010, Fair was charged with the murder of Arpana Jinaga. *See* Dkt. # 120 at 2 ¶ 3. After nine years in pretrial detention at King County Jail, Fair was acquitted. *Id.* Fair sues King County, the City of Redmond, Senior King County Deputy Prosecutor Jeff Baird, and Redmond Police Detective Brian Coats for malicious prosecution under federal (42 U.S.C. § 1983) and state law. *Id.* at 22–32, 34–35 ¶¶ 131–47, 161–68. He also brings claims against King County and the City of Redmond for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.* at 35–37 ¶¶ 169–83. Last, Fair brings a Section 1983 claim against King County for alleged mistreatment during his time in King County Jail. *Id.* at 32–34 ¶¶ 148–60. Fair's *Monell* claims relate to the events below.

King County, through the King County Prosecuting Attorney's Office (KCPAO), operates the Most Dangerous Offenders Project (MDOP). *Id.* at 4 ¶ 14. Under MDOP, the deputy prosecutor "works as part of an investigation team, which includes the detectives, the medical examiner, and forensic scientists." *Id.* When responding to a homicide scene, the deputy prosecutor "assumes immediate responsibility for the prosecution, preparing search warrants, coordinating the efforts of law enforcement and forensic scientists, and offering legal advice to investigators." *Id.* The prosecutor's responsibilities include "the charging decision and extends to all subsequent legal proceedings from arraignment through trial to sentencing." *Id.*

---

[1] To a large extent, this section limits the description of the background to allegations in the SAC related to King County's Amended Motion to Dismiss.

According to Fair, MDOP "assigns lawyers to do detective work." *Id.* He also says that MDOP "removes a vital check and balance mechanism within the criminal justice system between detectives and prosecutors." *Id.* at 22 ¶ 133. Fair contends that MDOP targets "those, like Fair, who are Black and/or have a prior criminal history." *Id.*

Fair alleges that Senior King County Deputy Prosecutor Jeff Baird, who was part of the Jinaga homicide investigative team, "acted as the creator/founder, policymaker, and supervisor for the MDOP program." *Id.* at 24 ¶ 133(i). Baird acted "under the supervision" of King County Prosecutor Daniel Satterberg "who held the final decision making authority for KCPAO and MDOP." *Id.* at 24–25 ¶ 133(i).

In 2008, Jinaga was murdered. *Id.* at 5 ¶18. KCPAO used MDOP resources throughout the homicide investigation and Baird "acted as a point person." *Id.* at 22 ¶¶ 133(a)–(b). For example, Baird "attended meetings of the investigative team, participated in interviews, directed investigative leads, assigned tasks to detectives and forensic analysts, coordinated communications between investigators, evaluated evidence, ghost-wrote probable cause affidavits for warrants, [and] decided when to recommend charges." *Id.* at 22–23 ¶ 133(b).

During the investigation, investigators would ask only race-related questions of witnesses when discussing Fair, and much of the questioning "was designed to highlight Fair's race apropos of nothing." *Id.* at 26 ¶¶ 138(a)–(b). Investigators also treated white suspects more favorably and credited the statements of white suspects "as being true[,]" "only . . . cursor[ily] . . . verif[ied] their statements, collect[ed] evidence from them or their . . . friends or family's homes, and perform[ed] other investigatory follow up." *Id*. at 26 ¶ 138(e). Also, DNA linking white suspects "to the scene of the crime was explained away or considered too circumstantial." *Id.*

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 3

On October 29, 2010, nearly two years after Jinaga's death, Fair was charged with her murder and booked into King County Jail. *Id.* at 19 ¶ 114. Fair's first trial started in February 2017 and ended with a hung jury. *Id.* at 20 ¶¶ 115–16. After a second trial in 2019, Fair was acquitted. *Id.* at 20 ¶¶ 117–18.

During eight of the nine years of his pretrial detention at King County Jail, Fair was housed in the Protective Custody Unit (PCU); Fair alleges that this decision was based on assumptions about his non-existent gang affiliations. *Id*. at 20 ¶¶ 120-21. While in the PCU, Fair would often be on "lockdown" in a solitary confinement cell, without access to a shower or exercise, for weeks at a time. *Id*. at 20 ¶ 122. Fair alleges that he asked for medical and psychiatric services but did not receive any treatment for conditions that he says he developed while in custody: severe sleep apnea, depression, anxiety, and post-traumatic stress disorder. *Id*. at 20–21 ¶¶ 124–25. Fair also accuses unnamed King County Jail staff of sexually harassing and humiliating him. *Id*. at 21 ¶ 126. He says that King County also has a "known policy" of leaving one jailer in charge of "the care and wellbeing of the entire PCU[.]" *Id.* at 33 ¶ 156.

On March 15, 2024, Fair filed the SAC. Dkt. # 120. King County moves to dismiss the *Monell* claims in that pleading. Dkt. ## 124, 126.

### III
#### DISCUSSION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 677-78.

A.   *Monell* Liability

King County may not be held liable under Section 1983 on a respondeat superior theory. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002). Instead, governmental liability under Section 1983 must hinge on at least one of four theories: (i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted; (ii) an unconstitutional action by an official with final policy-making authority; (iii) ratification by an official with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a failure to adequately train employees that amounts to "deliberate indifference" about the constitutional right at issue. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *City of Canton v. Harris*, 489 U.S. 378 (1989). The SAC seeks to plead the first (policy, practice, or custom), third (ratification), and fourth (failure to train) theories of *Monell* liability.

   1.   Fair's *Monell* Claims Related to Malicious Prosecution

      a.   Policy, Practice, or Custom

The SAC states that KCPAO operates MDOP, a program in which a deputy prosecutor "works as part of an investigative team" with "the detectives, the medical examiner, and forensic scientists." Dkt. # 120 at 4 ¶ 14. Under MDOP, "[t]he deputy [prosecutor] responding to the homicide scene assumes immediate responsibility for the prosecution, preparing search warrants, coordinating the efforts of law enforcement and forensic scientists, and offering legal advice to investigators." *Id.* The SAC also says that, through MDOP, King County "had a policy,

established practice, and custom of assigning prosecutors to act as de facto detectives in homicide investigations, which they were also assigned to as prosecuting attorneys." *Id.* at 22 ¶ 133.  "The Jinaga murder investigation relied on MDOP throughout the investigation to such an extent that Defendant Baird acted as a point person in the investigation." *Id.* at 22–23 ¶¶ 133(a)–(b).  The SAC states that MDOP "removes a vital check and balance mechanism within the criminal justice system between detectives and prosecutors." *Id.* at 22 ¶ 133.  The SAC also says that Fair's "experts have opined" on the "obvious" constitutional harm of a "biased investigation and prosecution" that targets "those, like Fair, who are Black and/or have a prior criminal history." *Id.*

King County contends that Fair "has not pled how the mere fact of having a prosecutor go to a homicide scene and work with law enforcement from the beginning of a case leads to malicious prosecution."  Dkt. # 124 at 8.  It says that Fair has not alleged "sufficient facts to show that it was the MDOP policy itself that led to a constitutional violation, rather than any of [Baird's] alleged individual actions." *Id.*  The County contends that for a local government to be liable "a municipal policy or custom must have caused . . . [the] constitutional injury." *Id.* at 7–8 (quoting *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022)).  It also argues that Fair has not met the standard for custom or practice because he relies only "on the facts of *this case* to support his allegation that the KCPAO has customs or practices of prosecutors violating constitutional rights of suspects when responding to homicide scenes and participating in investigations." *Id.* at 9–10 (emphasis in original).  King County says that the SAC does not cite "any prior incidents to support such a custom or practice." *Id.* at 10.

Fair responds that MDOP made Baird "the *de facto* lead detective" of the Jinaga homicide investigation and that "MDOP policies, procedures and customs were applied by . . . Baird, which resulted in Fair's constitutional harm."  Dkt. # 125 at 7–8 (quoting Dkt. # 120 at

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 6

23–24 ¶¶ 133(d), 133(g)–(h)). Fair argues that he "has sufficiently pled" that MDOP "created a substantial risk" of constitutional harm. *Id.* at 8 (quoting *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2023 WL 6297483, at *11 (E.D. Wash. Sept. 27, 2023)). But he admits that a "one-time malicious prosecution" is not a policy or custom. *Id.* at 9 (citing *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989)). Fair says that MDOP is an official program that "assigns lawyers to do detective work" and makes prosecutors part of homicide "investigation team[s]." *Id.* (citing Dkt. # 120 at 4 ¶ 14).[2]

A local government can be liable under Section 1983 if a plaintiff establishes that the government "had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir.2007)) (alteration in original); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (reasoning that a plaintiff must establish that the policy, practice, or custom was the "actionable cause" of the injury) (internal quotation omitted). A longstanding practice or custom must "constitute[ ] the standard operating procedure of the local governmental entity." *Hernandez v. San Bernardino Cnty.*, No. EDCV 22-1101 JGB (SPx), 2023 WL 3432205, at *7 (C.D. Cal. Apr. 13, 2023) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)) (alteration in original).

---

[2] In his response briefing, Fair says that King County failed to address his argument that "MDOP also caused 'judicial deception,' violating his rights under the Fourth Amendment." Dkt. # 125 at 7 (quoting Dkt. # 120 at 24 ¶ 133(h)). But this purported claim for judicial deception appears in the "42 U.S.C. § 1983 – CLAIMS RELATED TO MALICIOUS PROSECUTION OF FAIR" section of the SAC, and judicial deception is only referenced once in a single sentence in the SAC. Dkt. # 120 at 24       ¶ 133(h) ("Defendant Baird and other MDOP attorneys directed or influenced RPD accordingly, which resulted in *judicial deception* and Fair's malicious prosecution.") (emphasis added). The Court agrees with King County that this does not suffice to provide "fair notice" that Fair was bringing a claim for judicial deception. *See* Dkt. # 126 at 9 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). But as discussed below, Fair may amend the SAC to add a claim for judicial deception.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 7

Liability based on custom cannot be based on "isolated or sporadic incidents" but must be based on "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

The SAC does not show that MDOP was "the moving force" behind the constitutional harm he purportedly suffered. *See Hernandez*, 666 F.3d at 636. First, Fair has not pleaded any other instances that would show that KCPAO had an unconstitutional custom or practice of violating suspects' rights when a prosecutor is part of the investigative team under MDOP. *See Naranjo v. City of Redwood City*, No. 19-cv-01549-YGR, 2019 WL 3842074, at *8 n.14 (N.D. Cal. Aug. 15, 2019) ("With respect to customs and practices, liability may not be premised on an isolated incident."). Second, Fair has not alleged how a policy of having a prosecutor as part of a homicide investigative team leads to a biased investigation and prosecution. Although Fair alleges that MDOP "removes a vital check and balance mechanism within the criminal justice system" this conclusory statement does not show how MDOP's purported deficiencies "were obvious and the constitutional injury was likely to occur." *See Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (internal quotation and citation omitted). Also, despite Fair's allegation that MDOP turns prosecutors into "de facto detectives,"[3] this does not connect a policy of having a prosecutor as part of the homicide investigative team to a constitutional violation. *See e.g.*, *Jensen v. City of Garden Grove*, No. SACV 20-2031 JVS (ADSx), 2021 WL 3579415, at *3 (C.D. Cal. Apr. 22, 2021) (reasoning that the plaintiff failed to

---

[3] The SAC says that, under MDOP, the prosecutor "work[s] as part of an investigative team" and "assumes immediate responsibility for the prosecution, preparing search warrants, coordinating the efforts of law enforcement and forensic scientists, and offering legal advice to investigators." Dkt. # 120 at 4 ¶ 14. Even construing the allegations in the SAC in the light most favorable to Fair, the SAC does not show how MDOP "assigns lawyers to do detective work." *See id.*

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 8

allege sufficient facts to sustain a *Monell* claim because, among other things, the complaint failed "to connect the alleged policy as the cause of the purported harm") (citation omitted).

    b.  Ratification

A local government can be liable for an "isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)). To establish a ratification claim, a plaintiff must show that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1155 (9th Cir. 2007) (quoting *Ulrich*, 308 F.3d at 984-85). "The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Fair points to King County Prosecutor Daniel Satterberg and Senior King County Deputy Prosecutor Jeff Baird in connection with his ratification theory. *See* Dkt. # 120 at 24–25 ¶ 133(i). The SAC states, "All of the acts and omissions taken in regard to Fair were in accordance with Defendant King County's established practices or were ratified by policymakers and/or supervisors, including Defendant Jeff Baird and King County Prosecutor Daniel Satterberg." *Id.* It also says that "Defendant Jeff Baird acted as the creator/founder, policymaker, and supervisor for the MDOP program . . . [and] Defendant Jeff Baird acted under the supervision of Prosecutor Satterberg, who held the final decision making authority for KCPAO and MDOP." *Id.*

*Satterberg.* King County contends that Fair identifies Satterberg "as the final decision maker for KCPAO but does not identify a single fact to support that Satterberg ratified any practice, approved any decision, or even knew of any actions taken in this investigation." Dkt.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 9

# 124 at 12.  It also says that "Fair has failed to plead that Satterberg was aware that the custom or practice of sending prosecutors to crime scenes would lead to constitutional violations."  *Id.*

Fair counters that Satterberg was "Baird's immediate supervisor" and he "approved" of Baird's decisions and the "basis and reasons" for Baird's actions during the investigation.  Dkt. # 125 at 15.  Fair, relying on *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012), asserts that a plaintiff can establish a ratification claim by showing that a policymaking official "tacitly ratified" an employee's actions.  *Id.*  Fair contends that "Baird's actions in regard to Fair were, at a minimum, tacitly ratified."  *Id.*

The Court agrees with King County.  The SAC does not include sufficient facts to support a ratification claim based on Satterberg's actions.  Although the SAC states that Satterberg ratified all acts and omissions concerning Fair, this statement is conclusory and lacks factual support.  For example, the SAC does not state that Satterberg knew about any constitutional violations, nor does it identify specific actions Satterberg took that constitute approval of Baird's actions.  *See, e.g.*, *Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 803 (N.D. Cal. 2021) (dismissing the plaintiff's *Monell* claim based on ratification because the "allegations [were] conclusory and lacking factual support of ratification").  In *East Haven*, the Second Circuit, on an appeal from a district court's denial of the defendant's Rule 50 motion for judgment as a matter of law, reversed the judgment for the plaintiff because, among other things, the evidence presented at trial to show municipal liability based on ratification included no "instances in which supervisors were aware of abuse, or of a high probability of abuse, but failed to take corrective or preventive action."  *East Haven*, 691 F.3d at 85.  Thus, even though Fair asserts that Satterberg "tacitly ratified" Baird's decisions, Fair would still need to plead facts that show that Satterberg knew that Baird was committing constitutional violations and ratified those actions.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 10

*Baird.* King County also contends that the SAC describes Baird as a supervisor for MDOP "but does not sufficiently allege that Baird is the 'final policymaker' for KCPAO." Dkt. # 124 at 12. The SAC identifies Satterberg, not Baird, as the final decision maker for KCPAO and MDOP. *Id.* King County also says that the SAC does not state that "Satterberg delegated final decision-making authority" to Baird. Dkt. # 126 at 7.

Fair responds that the SAC alleges that all acts and omissions taken with respect to Fair "were ratified by policymakers and/or supervisors, including Defendant Jeff Baird." Dkt. # 125 at 14. (quoting Dkt. # 120 at 5, 24 ¶¶ 17, 133(i)). He says that Satterberg delegated his "final decision-making authority" to Baird because Baird acted under MDOP when he "violated Fair's constitutional rights." *Id.* (citing Dkt. # 120 at 4, 22 ¶¶ 14, 133 (b)) (describing actions Baird took during the Jinaga homicide investigation).

The Court disagrees with Fair. While the SAC identifies Baird as the policymaker and supervisor for MDOP, it also says that Baird was acting under Satterberg's supervision. The SAC does not state that Satterberg delegated final policymaking authority to Baird. Thus, the *Monell* claim for ratification is not properly brought against Baird because, according to the SAC, he was acting under Satterberg's supervision and not acting as an official with final policymaking authority. *See e.g.*, *Magdaleno v. Cnty. of Riverside*, No. EDCV 21-2027 (SHKX), 2022 WL 1843977, at *3 (C.D. Cal. Apr. 14, 2022) (reasoning that a *Monell* claim for ratification was improperly brought against a defendant-law enforcement officer because "he [was] alleged to be a subordinate" and was not "a policymaker who endorsed or ratified behavior").

        c.      Failure to Train

In alleging failure to train, the SAC addresses the equal protection component of Fair's Section 1983 malicious prosecution claim. The SAC states that King County "failed to properly

train and supervise employees on how to conduct racially unbiased investigations." Dkt. # 120 at 26 ¶ 138. It accuses KCPAO investigators of referencing race only when questioning witnesses about Fair and treating white suspects more favorably. *Id.* at 26–27 ¶¶ 138(a)–(g). It also says that the "disparate treatment" Fair received resulted from a "failure to train and supervise employees on how to conduct racially unbiased investigations" and that this failure amounted to "deliberate indifference to and violated" Fair's constitutional rights. *Id.* at 29 ¶ 139.

A government entity's "[f]ailure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). To state a claim for failure to train, a plaintiff must show (1) the inadequacy of the existing training program; (2) that "the officials have been deliberately indifferent 'to the rights of persons with whom the police come into contact'"; and (3) that "the inadequacy of the training 'actually caused the deprivation of the alleged constitutional right.'" *Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1039–40 (N.D. Cal. 2022) (quoting *Merritt v. Cnty. Of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)).

King County contends that Fair has not alleged a pattern of constitutional violations supporting deliberate indifference. *See* Dkt. # 124 at 16–18. It also argues that Fair has not pleaded sufficient facts to show that it was "highly predictable" that KCPAO employees would demonstrate a "'conscious disregard' for defendants' constitutional rights.'" *Id.* at 18 (quoting *Connick v. Thompson*, 563 U.S. 51, 71 (2011)).

Fair concedes that he did not allege a pattern of similar constitutional violations in the SAC but contends that this is a case in which "the need for more or different training is so obvious" and "the inadequacy so likely to result in the violation of constitutional rights." Dkt. # 125 at 11 (quoting *Harris*, 489 U.S. at 390).

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 12

When viewed in the light most favorable to Fair, the SAC sufficiently pleads a plausible claim that the lack of training about how to conduct racially unbiased investigations had obvious constitutional consequences. *See Ross v. City of Oakland*, No. 14-cv-800, 2014 WL 4744191, at *4 (N.D. Cal. Sep. 22, 2014) ("It is plausible that the City's failure to train was so obviously deficient that it could be subject to liability under § 1983 as a result of a single incident," — the erroneous attempted-murder conviction of the plaintiff, which resulted from, among other things, an officer's direction to the victim to identify the plaintiff in a photo montage); *Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (holding that the complaint established a "plausible" failure-to-train claim based on a single constitutional violation because the facility employees "obviously" lacked training in proper medical care which resulted in the prisoner's death).

2. Fair's *Monell* Claim Related to His Conditions of Confinement

The SAC states that King County maintained "a policy, practice, or custom of maintaining a longstanding constitutionally deficient facility with regard to safety, medical and mental health care, and training protocols, which placed inmates like Fair at substantial risk of continued harm." Dkt. # 120 at 33 ¶ 155. It also says that King County had a "policy and custom of understaffing —leaving one jailer responsible for the care and wellbeing of the entire PCU at a time." *Id.* at 33 ¶ 156.

King County argues that this *Monell* claim should be dismissed because Fair makes "conclusory statements" about the County Department of Adult and Juvenile Detention (DAJD) policies. *See* Dkt. # 124 at 12–15. Fair responds that King County's argument is "procedurally improper" because it could have been made in the County's prior motion to dismiss. Dkt. # 125 at 16. Fair says that "**there are no new allegations in the [SAC] relating to jail operations.**" *Id.* (emphasis in original).

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 13

Under Rule 12(g), a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Thus, "[t]he failure to challenge a particular cause of action in a prior 12(b)(6) motion precludes such a challenge in a subsequent 12(b)(6) motion." *Rutherford v. Palo Verde Healthcare Dist.*, No. LA CV13-01247 JAK (SPx), 2014 WL 12631845, at *10 (C.D. Cal. May 20, 2014); *see also Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-cv-01860-RAJ, 2021 WL 5987023, at *6 (W.D. Wash. Dec. 17, 2021) (reasoning that the defendant was "precluded" from raising certain arguments in its second Rule 12(b)(6) motion because these arguments had been "available" to the defendant when it had filed its first Rule 12(b)(6) motion).

Here, King County indeed makes an argument that it could have raised in its prior motion to dismiss. In its previous motion,[4] the County argued that claim preclusion barred Fair's Section 1983 claims related to his conditions of confinement in King County Jail. *See* Dkt. # 67 at 14–15. It said that Fair's prior lawsuit in which he asserted *Monell* claims against King County about conditions at King County Jail had been dismissed with prejudice, thus barring his current claim. *Id.* at 14. The Court rejected that argument. *See* Dkt. # 85 at 16–18 (reasoning that Fair had remained in pretrial detention for more than two years after the prior lawsuit settled with prejudice and King County "offered no evidence that [Fair] waived or somehow released it or its corrections officials from future claims"). In its second motion to dismiss, King County challenges the sufficiency of Fair's *Monell* claim related to DAJD's policy, custom, or practice about the conditions of Fair's confinement in King County Jail. *See* Dkt. # 124 at 12–15.

---

[4] King County referred to Rule 12(c) in its prior motion to dismiss, but it did not ask for judgment on the pleadings. *See* Dkt. # 67 at 6–7. The Court, in its Order resolving King County's first motion to dismiss, construed the motion as seeking dismissal under Rule 12(b)(6). *See* Dkt. # 85 at 7.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 14

Although King County asserts that an "amended complaint supersedes the original, the latter being treated thereafter as nonexistent[,]" *see* Dkt. # 126 at 10 (quoting *In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litigation*, 903 F. Supp. 2d 880, 893 (E.D. Cal. Sept. 6, 2012); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)), "[t]he filing of an amended complaint does not revive the right to argue by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading." *LLE One, LLC v. Facebook Inc.*, No. 16-CV-06232-JSW, 2019 WL 13201973, at *2 (N.D. Cal. Apr. 25, 2019) (internal quotation and citation omitted).[5] Thus, the Court declines to dismiss Fair's *Monell* claim related to his conditions of confinement in King County Jail.

B.   Leave to Amend

Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It should be given absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (internal citation omitted).  The Court grants Fair leave to file an amended complaint

---

[5] In its Reply, King County also asserts that Rule 12(b)(6) "is specifically excluded from [the Rule 12(g)(2)] waiver." Dkt. # 126 at 10.  This is inaccurate.  The exceptions to Rule 12(g)(2) are for pleadings under Rule 7(a), a motion under Rule 12(c), or trial.  *See* Fed. R. Civ. P. 12(g)(2); Fed. R. Civ. P. 12(h)(2) (A)–(C).  King County also says that for the purposes of its motion this argument can be treated as a Rule 12(c) motion.  Dkt. # 126 at 10.  But Rule 12(c) does not apply here.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO DISMISS - 15

for the policy-custom-or-practice and ratification theories of liability and the claim for judicial deception related to the alleged malicious prosecution.

## IV
### CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part the motion to dismiss:

- Fair's Section 1983 claim for malicious prosecution against King County is DISMISSED without prejudice with respect to the policy-custom-or-practice and ratification theories of liability;

- The Court otherwise DENIES the motion.

- The Court GRANTS Fair leave until October 31, 2024, to file a third amended complaint; such leave is limited to the claims dismissed without prejudice here and the claim for judicial deception related to the alleged malicious prosecution.

Dated this 11th day of October, 2024.

John H. Chun
United States District Judge