UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMANUEL D. FAIR,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY, a political subdivision of the State of Washington; CITY OF REDMOND, a municipal entity and political subdivision of the State of Washington,<br><br>Defendants. | CASE NO. 2:21-cv-01706-JHC<br><br>SEALED ORDER RE: DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT |

## I
## INTRODUCTION

This matter comes before the Court on Defendants' Joint Motion for Summary Judgment. Dkt. # 277. The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, the parties' thoughtful presentations at oral argument on May 11, 2026, and the applicable law. Being fully advised, and for the reasons below, the Court DENIES the motion.

## II
## Background

Because the facts have been extensively detailed in prior orders and submissions, the Court declines to reiterate them here. Instead, it incorporates by reference the Background section from its Order Re: Defendants' Motions for Summary Judgment (the May Order). *See* Dkt. # 224. As for later case developments, the Court summarizes the key procedural developments that have occurred since.

In its May Order, the Court granted in part and denied in part Defendants' Motions for Summary Judgment. *Id.* at 57–58. The Order concluded, among other things, that Detective Brian Coats and King County Prosecutor Jeff Baird—the Individual Defendants—are not entitled to qualified immunity as a matter of law because genuine issues of material fact exist as to whether Plaintiff was prosecuted without probable cause. *See id*. at 29, 54. Defendants then filed a notice of appeal, challenging the Court's decision to deny qualified immunity to the Individual Defendants with respect to Plaintiff's malicious prosecution and judicial deception claims. *See* Dkt. ## 226 & 228; *see also Fair v. Coats, et al*., No. 25-3751 (9th Cir.).[1] Defendants also moved to stay all proceedings before this Court, pending the Ninth Circuit's resolution of the Appeal. *See* Appeal Dkt. # 21.

On December 4, 2025, the Ninth Circuit granted the Individual Defendants' Motion to Stay, noting that a stay is appropriate because the Individual Defendants "have made a strong showing that they are likely entitled to qualified immunity based on the existence of probable cause." Dkt. # 254 at 2; *see also* Appeal Dkt. # 76 at 2. After a flurry of motions, *see generally* Appeal Dkt., the Ninth Circuit proceeded to hold oral argument on January 8, 2026. *See* Dkt. #

[1] The Court refers to the Ninth Circuit case as "the Appeal" throughout this Order and cites to its docket as "Appeal Dkt."

91. Four days later, the Ninth Circuit granted "a limited remand to allow the district court to rule on [Plaintiff's] forthcoming voluntary and unconditional motion to dismiss with prejudice all claims against Defendants-Appellants Jeff Baird and Brian Coats." Appeal Dkt. # 92 at 2. Plaintiff then filed a "Motion for Voluntary Dismissal of Defendants Baird and Coats with Prejudice" with this Court. Dkt. # 264.

After reviewing the filings and holding a hearing, the Court granted Plaintiff's Motion for Voluntary Dismissal (Dkt. # 264). *See* Dkt. ## 269 & 270. In granting the motion, however, the Court stated that the parties must re-brief summary judgment on probable cause should the dismissal of the Individual Defendants moot the pending Appeal. *See id*. The case then returned to the Ninth Circuit where, pursuant to the parties' agreement, the Ninth Circuit dismissed the Appeal with prejudice, thereby lifting the stay and returning the case to this Court. *See* Dkt. # 271; *see also* Appeal Dkt. # 96. This motion—Defendants' Joint Motion for Summary Judgment on the narrow issue of probable cause with respect to Plaintiff's remaining claims[2] against Defendants King County and the City of Redmond—soon followed. *See* Dkt. # 277.

## III
## DISCUSSION

Defendants contend that they are entitled to summary judgment because: (1) "probable cause existed as a matter of law to arrest and prosecute [Plaintiff]"; and (2) the existence of probable cause "is a complete defense to Plaintiff's remaining claims that are premised on the investigation[,]" and so Plaintiff's malicious prosecution and judicial deception claims against

[2] The claims addressed in Defendants' Joint Motion are: (1) Plaintiff's § 1983 malicious prosecution and judicial deception claims; and (2) Plaintiff's state-law malicious prosecution claims. *See generally* Dkt. # 277. Plaintiff's other remaining claims, i.e., his § 1983 claims that concern his treatment in jail, do not implicate probable cause and thus are beyond the scope of this motion. *See id*. at 7 n.1, 8 n.3.

King County and the City of Redmond—Cause One and Three in the Third Amended Complaint (Dkt. # 147)—should be dismissed. Dkt. # 277 at 7, 13–14.

A. Legal Standards

1. Summary Judgment

Summary judgment is warranted if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' . . . if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to prevail as a matter of law on all claims for which they seek summary judgment. *See Celotex*, 477 U.S. at 323. To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

"On summary judgment, the Court 'must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial.'" *Rodarte*

*v. Skagit Cnty.*, 2021 WL 6197004, at *3 (W.D. Wash. Dec. 30, 2021) (quoting *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255.

2. Malicious Prosecution & Judicial Deception

Malicious prosecution and judicial deception are two related, but fundamentally distinct, theories of liability. *See, e.g.*, *Smith v. Almada*, 640 F.3d 931, 937–38 (9th Cir. 2011) (describing separate standards for judicial deception and malicious prosecution); *Poole v. City of Vancouver*, 2025 WL 2880137, at *11 (W.D. Wash. Oct. 9, 2025) (same).[3] A malicious prosecution claim "allows a plaintiff to recover for unjustifiable criminal proceedings and wrongfully initiated civil actions." *Chen v. D'Amico*, 2017 WL 5900352, at *5 (W.D. Wash. Nov. 30, 2017) (internal quotation marks and citation omitted). "[T]he gist of such an action" thus rests in "malice and want of probable cause[.]" *Peasley v. Puget Sound Tug & Barge Co.*,

[3] The Court disagrees with Plaintiff's characterization of the relationship between judicial deception and malicious prosecution. Plaintiff says that "judicial deception is not an independent concept from malicious prosecution" and thus can serve as the "predicate" for a claim of malicious prosecution under state law. *See* Dkt. # 284 at 16–17. But as articulated in *Smith*, *Poole*, and other cases that discuss both kinds of claims, judicial deception and malicious prosecution are distinct claims with distinct elements. *See, e.g.*, *Smith*, 640 F.3d at 937–38; *Poole*, 2025 WL 2880137, at *11. And contrary to Plaintiff's suggestion, Washington law does not make "the convergence between these doctrines explicit[.]" *Id*. at 17. Instead, as stated in Plaintiff's cited cases, a prima facie finding of probable cause under Washington law can be rebutted by a showing that "the conviction was obtained by fraud, perjury, or other corrupt means." *See Fondren v. Klickitat Cnty.*, 79 Wash. App. 850, 856, 905 P.2d 928 (1995); *see also Hanson v. City of Snohomish*, 121 Wash. 2d 552, 556, 852 P.2d 295 (1993). While colloquially, fraud, perjury, and corruption could all be described as "judicial deception," the term "judicial deception" has a distinct legal meaning. *See Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011) (defining the elements of a claim of judicial deception, without reference to "fraud," "perjury," or "corruption"). The Court thus finds it legally incorrect (and confusing) to refer to "judicial deception" as a predicate for "malicious prosecution," and so it refers to and discusses these claims as distinct concepts. In doing so, however, the Court still accepts and acknowledges Plaintiff's broader argument—that a deceptive act by an officer in a judicial context can give rise to a judicial deception *and* a malicious prosecution claim.

13 Wash. 2d 485, 497, 125 P.2d 681 (1942). And in Washington, such a claim can be brought under either 42 U.S.C. § 1983 or state law.

To maintain a § 1983 claim for malicious prosecution, "a plaintiff 'must show that the defendants prosecuted [them] with malice and without probable cause, and that [the defendants] did so for the purpose of denying [the plaintiff] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). And in Washington, "a malicious prosecution claim requires the plaintiff to prove: (1) the defendant instituted or maintained the alleged malicious prosecution; (2) lack of probable cause to institute or continue the prosecution; (3) malice; (4) the proceedings ended on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage as a result." *Poole*, 2025 WL 2880137, at *11 (internal quotation marks and citation omitted); *see also Bender v. City of Seattle*, 99 Wash. 2d 582, 593, 664 P.2d 492 (1983).

In contrast, a judicial deception claim allows a plaintiff to recover for material misrepresentations or omissions in a warrant. *See Chism*, 661 F.3d at 386 (defining judicial deception); *see also Tavakoli v. City of Los Angeles*, 2019 WL 1297950, at *11 (C.D. Cal. Mar. 18, 2019) (rejecting a judicial deception claim because there was no warrant). The gist of such an action thus depends on an officer misleading a magistrate in a warrant application. *See Palacios v. Cnty. of Los Angeles*, 2022 WL 19241159, at *3 (C.D. Cal. Dec. 7, 2022). In Washington, a claim for judicial deception is only available under § 1983, as the state does not recognize a judicial deception tort.

To maintain a § 1983 claim for judicial deception, a plaintiff "must (1) make a substantial showing of the officers' deliberate falsehood or reckless disregard for the truth and (2) establish

that, but for the dishonesty, the searches [or] arrest would not have occurred." *Chism*, 661 F.3d at 386 (cleaned up and citations omitted). As for the first element, "clear proof" is not required: the plaintiff must merely make a "'substantial showing' to put the issue to a trier of fact," with "[i]ssues regarding whether an officer acted recklessly [ ] viewed from the perspective of a reasonable factfinder." *Poole*, 2025 WL 2880137, at *11; *Palacios*, 2022 WL 19241159, at *3. As for the second element, the plaintiff must "establish that the false statements and omissions were material to the magistrate judge's probable cause determination." *Chism*, 661 F.3d at 388–89. The materiality element is "a question for the court," and "requires the plaintiff to demonstrate that 'the magistrate [judge] would not have issued the warrant with [the] false information redacted, or [the] omitted information restored.'" *Smith*, 640 F.3d at 937 (quoting *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997)).[4]

3. Probable Cause

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).[5] Probable cause exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the accused] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).[6] In determining probable cause, the decisionmaker must make "a 'practical, common-

[4] *See also Chism*, 661 F.3d at 389 ("The false statements and omissions . . . [are] material if the affidavit, once corrected and supplemented, would not have provided a magistrate judge with a substantial basis for finding probable cause.") (internal quotation marks and citation omitted).

[5] *See also Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.").

[6] *See also United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) ("The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the

sense' decision based on the totality of the circumstances, including the veracity, basis of knowledge and reliability of the information provided by informants." *Jensen*, 425 F.3d at 704 (quoting *Gates*, 462 U.S. at 214); *see also State v. Maddox*, 152 Wash. 2d 499, 509, 98 P.3d 1199 (2004). "Probable cause is an objective standard[,]" with courts considering the events leading up to an arrest "from the standpoint of an objectively reasonable police officer[.]" *Lopez*, 482 F.3d at 1072; *D.C. v. Wesby*, 583 U.S. 48, 56–57 (2018) (internal quotation marks and citation omitted). The relevant inquiry is thus "whether a reasonable officer could conclude—considering all of the surrounding circumstances . . .—that there was a 'substantial chance of criminal activity.'" *Id.* at 61 (quoting *Gates*, 462 U.S. at 244 n.13).

As alluded to by the parties, however, there is some discrepancy as to how this standard is described by courts. *See generally* Dkt. ## 277 & 284. On the one hand, the Supreme Court has held that probable cause is a fundamental constitutional principle and must "be strictly enforced." *Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Bailey v. United States*, 568 U.S. 186, 192–93 (2013). But on the other, the Supreme Court has repeatedly stated that probable cause "is not a high bar" and that it does not require proof beyond a reasonable doubt. *Kaley v. United States*, 571 U.S. 320, 338 (2014) (collecting cases); *Draper v. United States*, 358 U.S. 307, 312 (1959).

As a result, lower courts have held that "[p]robable cause does not require 'certainty,' a 'preponderance of the evidence,' or even a 'prima facie' showing" of wrongdoing. *Borden v. Bare*, 2022 WL 4586231, at *3 (E.D. Cal. Sept. 29, 2022), *aff'd*, 2023 WL 6937410 (9th Cir.

knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [accused] had committed or was committing an offense.'") (quoting *United States v. Bernard*, 623 F.2d 551, 559 (1980)).

Oct. 20, 2023) (citations omitted).[7] Instead, it simply requires a "fair probability" or "substantial chance of criminal activity." *Lopez*, 482 F.3d at 1072; *Gates*, 462 U.S. at 243 n.13. Probable cause is thus not negated by: (1) "[t]he mere existence of some evidence that could suggest [a valid defense]";[8] (2) an officer's failure "to rule out a suspect's innocent explanation for suspicious facts"[9] or the existence of "another reasonable, or more reasonable, interpretation of the events";[10] (3) "the suggestion of an alternative suspect"[11] or "the identification of multiple suspects";[12] (4) the government's failure to include all information in its possession in the probable cause affidavit;[13] or (5) the eventual exoneration or acquittal of the accused,[14] or even insufficient evidence from the outset to convict.[15] But "[m]ere suspicion, common rumor, or

---

[7] *See also United States v. Steinman*, 159 F.4th 550, 568 (9th Cir. 2025) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision.") (cleaned up and citations omitted); *Maddox*, 152 Wash. 2d at 501 ("Probable cause requires a probability of criminal activity, not a prima facie showing of criminal activity.").

[8] *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *see also Thomas v. Pac. Cnty. Sheriff's Dep't*, 2023 WL 7213570, at *6 (W.D. Wash. Nov. 2, 2023) (finding probable cause despite the accused arguing that he acted in self-defense).

[9] *Wesby*, 583 U.S. at 61; *see also State v. Graham*, 130 Wash. 2d 711, 725, 927 P.2d 227 (1996) ("[P]robable cause is not negated merely because it is possible to imagine an innocent explanation for observed activities.") (internal quotation marks and citation omitted); *Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) ("The fact that other inferences are possible does not mean that there is a triable issue of fact as to whether there was probable cause.").

[10] *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Knapp v. Goudschaal*, 2025 WL 2306534, at *11 (W.D. Wash. Aug. 11, 2025) ("Even if [the accused's] theory of the case were possible it would not negate the existence of probable cause at the time of the affidavit[.]").

[11] *Aguirre v. Seminole Cnty*., 158 F.4th 1276, 1307–08 (11th Cir. 2025).

[12] *United States v. Adams*, 2020 WL 3125914, at *2 (D. Or. June 12, 2020); *see also Lester v. Roberts*, 986 F.3d 599, 611–12 (6th Cir. 2021) (affirming the district court's probable cause finding even though the police had identified more than one potential suspect).

[13] *See United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992); *Ewing v. City of Stockton*, 588 F.3d 1218, 1226 (9th Cir. 2009).

[14] *See, e.g.*, *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009) (affirming the district court's probable cause finding, even though the accused was eventually exonerated by DNA evidence that pointed to another suspect); *Aguirre*, 158 F.4th at 1308 (same); *Freeman*, 68 F.3d at 1189 ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause.").

[15] *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 475 (9th Cir. 2007) (affirming the district court's probable cause finding even though the accused likely could not have been convicted of

even strong reason to suspect are not enough." *Lopez*, 482 F.3d at 1072 (quoting *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)); *see also Beck v. State of Ohio*, 379 U.S. 89, 97 (1964). And a probable cause finding that is based on material falsehoods or omissions may be negated if such facts "cast doubt on the existence of probable cause." *Ewing*, 588 F.3d at 1226 (citation omitted); *see also United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985).

a. Probable Cause & Malicious Prosecution

Because "lack of probable cause" is an element of a malicious prosecution claim, proof of probable cause is a complete defense to such a claim under both federal and state law.[16] In a Washington malicious prosecution action,[17] "probable cause" requires "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily prudent and cautious [person] in believing the accused guilty of the offense *with which [they are] charged*." *Peasley*, 13 Wash. 2d at 508 (emphasis in original). Probable cause is thus established as a matter of law

> [i]f it clearly appears that the [officer], before instituting criminal proceedings against the [accused], made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to [them], and that the prosecuting attorney thereupon preferred a criminal charge and caused the arrest of the accused[.]

*Id.* at 499–500. "Whether information not disclosed by the [malicious prosecution] defendant was 'material' is an issue of fact for the trier of fact[.]" *Youker v. Douglas Cnty.*, 162 Wash. App. 448, 463, 258 P.3d 60 (2011). And "if any issue of fact exists, under all the evidence, as to

---

the crime for which he was charged because of a lack of evidence); *Knapp*, 2025 WL 2306534, at *1 (concluding that the government's subsequent loss of "faith in its ability to prove its case beyond a reasonable doubt at trial" did not negate the original probable cause finding).

[16] *See Poole*, 2025 WL 2880137, at *11; *Peasley*, 13 Wash. 2d at 499.

[17] The Court uses the Washington State standard for malicious prosecution, as "[f]ederal courts rely on state common law for elements of malicious prosecution." *Mills*, 921 F.3d at 1169.

whether or not the [officer] did fully and truthfully communicate to the prosecuting attorney . . . all the facts and circumstances within [their] knowledge," then probable cause has not been established as a matter of law "and the existence or nonexistence of probable cause must then be determined by the jury." *Peasley*, 13 Wash. 2d at 500.

"A prima facie case of want of probable cause is established by proof that the criminal proceedings were dismissed or terminated in favor of the party bringing the malicious prosecution action." *Id*. at 498. Once made, the plaintiff's prima facie case may then be rebutted by the defendant's evidence. *Id.* at 499. "If it is so rebutted, then the plaintiff must *by evidence* affirmatively establish want of probable cause." *Id.* (emphasis in original). "Among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *McGuffin v. Dannels*, 790 F. Supp. 3d 1079, 1116–17 (D. Or. 2025) (quoting *Awabdy*, 368 F.3d at 1067); *see also Fondren*, 79 Wash. App. at 856 ("[The plaintiff's] conviction conclusively establishes probable cause, unless the conviction was obtained by fraud, perjury, or other corrupt means.").

In conducting this analysis, courts typically review the officer's probable cause affidavit and ask whether probable cause would still exist if the challenged inaccuracies were corrected. *See Smith*, 640 F.3d at 938; *see also Aguirre*, 158 F.4th at 1301–02. "[I]n applying this standard, [the court] consider[s] only the information before the magistrate, minus any material misstatements, plus any material, omitted information." *Id*. If this updated version of the affidavit would no longer support a probable cause finding, the plaintiff's malicious prosecution

claim may proceed.[18] If not, a court must grant summary judgment against the plaintiff on their claim.[19]

b. Probable Cause & Judicial Deception

While not explicitly mentioned in the claim's definition, probable cause is still highly pertinent to a claim of judicial deception. This is because proving the second element—that the arrest (or search) would not have occurred but for the officer's dishonesty—requires a plaintiff to show that the "the affidavit, once corrected and supplemented, would not have provided a . . . substantial basis for finding probable cause." *Chism*, 661 F.3d at 389 (internal quotation marks and citation omitted).[20] In other words, to establish the second element of a judicial deception claim, the plaintiff must show that: (1) the officer's probable cause affidavit contained false statements or suffered from omissions; and (2) that these falsehoods or omissions were necessary to the probable cause finding that led to the arrest (or search). *See Franks v. Delaware*, 438 U.S.

[18] *See, e.g.*, *Turngren v. King Cnty.*, 104 Wash. 2d 293, 308–09, 705 P.2d 258 (1985) (denying summary judgment on the malicious prosecution claim because there is a genuine issue of material fact as to whether the warrant would have issued if the omitted information had been included); *Navarrete v. City of Kent*, 2025 WL 2855362, at *14 (W.D. Wash. Oct. 8, 2025) (denying summary judgment on the malicious prosecution claim because there is a genuine dispute of material fact as to whether the probable cause affidavit contained outcome-determinative omissions and mischaracterizations); *Spencer v. Peters*, 966 F. Supp. 2d 1146, 1164 (W.D. Wash. 2013), *on reconsideration in part* (Oct. 2, 2013) (denying summary judgment on the malicious prosecution claim because there is a genuine dispute of material fact as to whether the probable cause determination was based on fabricated evidence).

[19] *See, e.g.*, *Smith*, 640 F.3d at 938 (affirming grant of summary judgment against the plaintiff on the malicious prosecution claim because the warrant application, "even after correcting for the allegedly false and omitted information[,]" would still support probable cause for the plaintiff's prosecution); *Ewing*, 588 F.3d at 1224 (same); *Poole*, 2025 WL 2880137, at *14, 17 (granting summary judgment against the plaintiff on the malicious prosecution claim because, even after removing or correcting the challenged statements, the probable cause affidavit would still support a finding of probable cause).

[20] *See also United States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) ("The key inquiry is whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.") (internal quotation marks and citation omitted).

154, 155–56 (1978); *Perkins*, 850 F.3d at 1116 (applying *Franks* to evaluate a probable cause showing in a warrant application).[21]

Thus, although officers are no doubt required to put forward truthful information in a warrant application,[22] a judicial deception claim requires more than a showing that the officer's affidavit contained an omission, false statement, or misrepresentation: it requires the plaintiff to show that, once the omitted information is added, the false statement is disregarded, or the misrepresentation is corrected, the affidavit "would not have provided the magistrate with a substantial basis for finding probable cause." *Chism*, 661 F.3d at 389; *see also Franks*, 438 U.S. at 165. If this is established, the plaintiff may proceed with their judicial deception claim.[23] If not, a court should grant summary judgment against the plaintiff on their claim.[24]

---

[21] *See also Pelayo v. City of Pomona*, 2019 WL 994968, at *10 (C.D. Cal. Jan. 2, 2019) (granting summary judgment against the plaintiff on the judicial deception claim because the plaintiff did not show "that the arrest would not have occurred absent [the officers' allegedly false statements in their probable cause declarations]").

[22] *See, e.g.*, *Franks*, 438 U.S. at 165 ("[I]t would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment."); *Lombardi*, 117 F.3d at 1126 ("[I]t is only objectively unreasonable for a law enforcement officer deliberately or recklessly to make material omissions."); *Stanert*, 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.").

[23] *See, e.g.*, *Perkins*, 850 F.3d at 1119, 1123 (reversing the district court's decision because "a corrected warrant application would not support probable cause"); *Palacios*, 2022 WL 19241159, at *4–5 (denying summary judgment because there "is a genuine factual dispute about the accuracy of the statements in the [probable cause] affidavit"); *Chism*, 661 F.3d at 389, 393 (reversing summary judgment because "a corrected version of [the officer's] affidavit would not have provided the magistrate with a substantial basis for finding probable cause").

[24] *See, e.g.*, *Poole*, 2025 WL 2880137, at *11, 17 (granting summary judgment against the plaintiff on the judicial deception claim because "removing or correcting the erroneous statement [in the affidavit] would make no difference to the probable cause determination"); *Ewing*, 588 F.3d at 1224 (affirming the district court's grant of summary judgment against the plaintiff on the judicial deception claim because "[n]either of the problematic representations [in the probable cause affidavit were] critical to the probable cause determination").

* * *

In sum, when a plaintiff brings a § 1983 malicious prosecution claim, a Washington state malicious prosecution claim, or a § 1983 judicial deception claim, a defendant may raise probable cause as a defense. If the defendant argues that there was probable cause based on an officer's affidavit, the plaintiff may then challenge the validity of the probable cause finding by arguing that the affidavit contained material omissions or falsehoods. If this showing is made, the court must then determine whether the affidavit, once corrected and supplemented, would still contain sufficient facts to establish a "fair probability" or "substantial chance" that the plaintiff was responsible for the crime for which they were arrested. If the updated affidavit would still support a probable cause finding as a matter of law, the court must grant summary judgment against the plaintiff on their malicious prosecution and judicial deception claims. If, however, there is a triable issue of fact as to whether the updated affidavit would support a probable cause finding,[25] the court must deny summary judgment.

B. Analysis

Because of the relationship between probable cause and claims of malicious prosecution and judicial deception discussed above, summary judgment here hinges on whether Defendants have established, as a matter of law, that they had probable cause to arrest Plaintiff for the murder of Arpana Jinaga on the day that Plaintiff was arrested for this crime. Defendants contend that they have met this burden, as a reasonable officer could conclude, under the totality of the circumstances, that there was a "fair probability" or "substantial chance" that Plaintiff was

[25] Although probable cause is generally a question of law to be determined by the court, *see Chen*, 2017 WL 5900352, at *9, "[w]hether any omissions or misstatements are material [to a finding of probable cause] is a mixed question of law and fact." *Garza*, 980 F.2d at 551. And courts should not determine probable cause at the summary judgment stage if there are any factual disputes concerning the existence of probable cause for the arrest. *See Chen*, 2017 WL 5900352, at *9; *Woods v. City of Reno*, 2020 WL 4194844, at *13 (D. Nev. July 21, 2020).

responsible for Jinaga's murder based on the contents of the Probable Cause Certification (PC Cert). *See generally* Dkt. # 277. Plaintiff responds that summary judgment is inappropriate, as: (1) Plaintiff's acquittal establishes a prima facie case of want of probable cause; and (2) Defendants have not rebutted this presumption, as the PC Cert contains material omissions and misrepresentations that, when corrected, would negate probable cause to arrest Plaintiff for Jinaga's murder. *See generally* Dkt. # 284. Alternatively, Plaintiff contends that there is at least a triable issue of fact that should be presented to the jury as to whether the omissions and misrepresentations in the PC Cert impacted the magistrate's probable cause determination. *See id.*

The Court begins by noting that apart from any purported misrepresentations or omissions, the PC Cert itself appears to support a probable cause finding. *See generally* Dkt. # 197 at 301–08. The PC Cert begins by describing the murder of Arpana Jinaga. *Id.* at 301–05. It provides a brief description of the victim and her apartment, the Halloween party, and the events leading up to her body being discovered. *Id*. It also explains the conditions in which the body and crime scene were found, discusses the results of Jinaga's autopsy, and describes the various pieces of physical evidence that were recovered from the apartment complex where the murder occurred. *Id*. The PC Cert then identifies Plaintiff and describes the evidence that links him to the crime: eyewitness accounts of Plaintiff's whereabouts early on the morning of November 1, 2008, Plaintiff's own statements to detectives during the investigation, discrepancies between Plaintiff's phone records and his statements to detectives, and DNA evidence connecting Plaintiff to three[26] key pieces of physical evidence from the crime scene—a

[26] Defendants' motion repeatedly refers to a fourth piece of evidence—a bloody tissue that was found in the room with Jinaga's body. *See generally* Dkt. # 277. But this piece of evidence was not mentioned in the PC Cert, *see* Dkt. # 197 at 301–08, and thus was not before the magistrate when they

red terrycloth bathrobe belonging to Jinaga that was found in the dumpster with her blood on it, a piece of duct tape found in Jinaga's apartment that was likely used to gag her on the night of the murder,[27] and a swab from Jinaga's neck that was taken at the autopsy (where it was determined that she died by asphyxia due to ligature strangulation). *Id.* at 305–08.

These facts appear to be described with an appropriate level of detail.[28] And there is nothing in the record (or in Plaintiff's Response) that would suggest that the PC Cert contains fabricated evidence or material falsehoods. *See generally* Dkt.; *see also* Dkt. ## 278 at 27–28 (Plaintiff's counsel acknowledging that Plaintiff gave changing stories to police and that his DNA matched DNA evidence found at the crime scene); 284 at 5–9 (Plaintiff affirming many of the same facts from the PC Cert). The PC Cert also appears to rely on the reasonable inference that Plaintiff's presence at the apartment complex on the night of the murder, his inconsistent and contradictory statements to police, and the existence of DNA evidence linking him to important objects at the crime scene give rise to a "substantial chance" or "fair probability" that Plaintiff was responsible for Jinaga's murder.[29] And although Plaintiff contends that the PC Cert contains

---

made their probable cause determination. While Defendants contended at oral argument that the Court may still consider this evidence in connection with Plaintiff's malicious prosecution claim, *see* Dkt. # 289, such a contention runs counter to the caselaw on malicious prosecution and probable cause discussed in part III(A)(3)(a) above. The Court thus excludes this evidence from its probable cause analysis.

[27] This piece of duct tape, referred to by Defendants as the "end of duct tape" or the "gag portion," is distinct from the larger duct tape roll and the other piece of duct tape—the "tape length portion" or "length of duct tape leading to the gag"—discussed in Plaintiff's Response The Court notes that although Plaintiff is correct that Cameron Johnson could not be excluded as a match for some of the duct tape evidence, i.e., the tape length portion, *see* Dkt. # 284 at 3, 21, Johnson was conclusively excluded as a match for the duct tape evidence that is discussed in the PC Cert, i.e., the gag portion. *See* Dkt. ## 277 at 6, 10; 286 at 6 n.3.

[28] *See, e.g.*, *Franks*, 438 U.S. at 165 ("[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter."); *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause[.]").

[29] Courts routinely conclude that inconsistent statements to police and/or DNA evidence that links the accused to the crime scene is sufficient to support a probable cause finding. *See, e.g.*, *United States v. Koshnevis*, 979 F.2d 691, 695 (9th Cir. 1992) (concluding that the defendant's "inconsistent statements" to officers contributed to a probable cause finding); *United States v. $105,180 in U.S. Currency*, 2013 WL

various misrepresentations and omissions, he does not actually argue that the PC Cert, if viewed in isolation, fails to establish probable cause as a matter of law. *See generally* Dkt. # 284; *see also* Dkt. # 289 (Plaintiff's counsel confirming that the PC Cert, if viewed in isolation, could support probable cause).

Accordingly, the Court finds that a reasonably prudent person could conclude, based solely on the PC Cert, that there was a "fair probability" or "substantial chance" that Plaintiff was responsible for Jinaga's murder. *See Lopez*, 482 F.3d at 1072; *Wesby*, 583 U.S. at 61. Defendants have thus rebutted Plaintiff's showing of a prima facie case of want of probable cause, *see id.*, and so the burden shifts back to Plaintiff to affirmatively establish want of probable cause based on deficiencies in the PC Cert.[30] The Court addresses each purportedly material omission and misrepresentation raised by Plaintiff's Response below.[31]

*Misrepresentations Concerning Other DNA Evidence*. Plaintiff contends that the PC Cert was misleading because it repeatedly references a single killer and then "suggests that the only DNA or other physical evidence linked to the crime was Fair's." Dkt. # 284 at 11. The Court disagrees.

---

2153326, at *9 (D. Ariz. May 17, 2013) (concluding that the defendant's inconsistent stories and implausible explanations are "probative of illegal activity"); *Williams v. Reinhardt*, 2016 WL 4771383, at *4 (D.N.J. Sept. 12, 2016) (concluding that a preliminary DNA match with evidence reasonably connected to the alleged crime is sufficient to support a probable cause finding) (collecting cases); *Matter of Extradition of Lebiedziński*, 2021 WL 5232735, at *8 (N.D. Ill. Nov. 10, 2021) (concluding that DNA evidence on a pair of men's boxers in the victim's home and on the victim's nightgown, in a mixed profile with the victim's blood, is sufficient to support a probable cause finding); *United States v. Hinton*, 113 F. Supp. 3d 1277, 1294–95 (N.D. Ga. 2015), *aff'd*, 676 F. App'x 842 (11th Cir. 2017) (concluding that even if certain information was included in the affidavit, "it would not have prevented a finding of probable cause because the affidavit would have still shown that [the accused's] DNA profile matched the DNA from the sample taken from the crime scene") (internal quotation marks and citation omitted).

[30] *See Peasley*, 13 Wash. 2d at 498–99; *Franks*, 438 U.S. at 165; *Smith*, 640 F.3d at 938; *Chism*, 661 F.3d at 389.

[31] Because probable cause is measured at the moment of arrest and is evaluated by looking at the information placed before the magistrate, *see* part III(A)(3) above, the Court does not consider any of the post-charge evidence discussed in Plaintiff's Response.

Although the PC Cert describes the murder as a single-killer crime, it also explicitly states that "DNA profiles from other tenants and from Jinaga's boyfriend were found in her apartment and on evidence taken from her apartment." Dkt. # 197 at 308. Plaintiff's statement—that the PC Cert "affirmatively created the false impression that the only physical evidence linking any individual to the crime pointed to Fair[,]" Dkt. # 284 at 22—is thus incorrect. Accordingly, the Court finds no "misrepresentation" to correct, and so it declines to find that Plaintiff has affirmatively established want of probable cause on this ground.

*Omissions Concerning Other Suspects*. Plaintiff contends that the PC Cert is deficient because it fails to mention the names of other suspects, as well as the specific evidence that connects these individuals to the crime. *See* Dkt. # 284 at 10–11. The Court agrees.

As noted by Plaintiff, the PC Cert briefly references the DNA of "Jinaga's boyfriend"—Aaron Gurtler—but does not mention that Jinaga had recently ended the relationship, that Gurtler had no alibi, or that Gurtler's semen was found at the crime scene. *See generally* Dkt. # 197 at 301–08; *see also* Dkt. # 284 at 5, 10. It also does not name the specific objects on which Gurtler's DNA was found—the bath towel and the green fitted sheet—nor does it even mention that such objects were present at the crime scene, let alone that DNA samples were recovered from them. *See id*.

The PC Cert also does not name Cameron Johnson—the other key suspect in the case—even though records suggest that police were actively investigating him in connection with the murder. *See generally* Dkt. # 197 at 301–08; *see also* Dkt. # 284 at 2–4, 10–12. Likewise, the PC Cert does not mention that an oily lighter and white powdery substance were found in Johnson's apartment, that Johnson made suspicious statements and engaged in peculiar behaviors before and after the murder, that Johnson's palm print was found on the sliding glass door leading to Jinaga's balcony, or that Johnson's DNA was tied to two key pieces of evidence—the

motor oil bottle that was found in the dumpster and the duct tape roll that was found in the apartment. *Id*. The PC Cert does not say that someone told investigators that a man, who matched Johnson's description and "definitely wasn't black," was standing in Jinaga's doorway around 3:00 a.m. *Id*. And it fails to note that some of the evidence that links Plaintiff to the crime would also link Johnson, such as the fact that Johnson, like Plaintiff, could have seen Jinaga returning to her apartment or that his DNA was connected to some of the duct tape evidence. *See id.*

Last, the PC Cert fails to identify other key facts that would tend to exculpate Plaintiff. *Id*. For example, the PC Cert does not mention that DNA samples were found on the shoelace—the potential ligature—and that Plaintiff's DNA was excluded from these profiles. *See id*. It also does not mention that unidentified male DNA was found on the body and on the tampon next to Jinaga's body and that Plaintiff's DNA was conclusively excluded from these samples. *Id*.

Considering each of these omissions individually, the Court does not find that probable cause is defeated.[32] But "[t]he effect of misrepresentations and omissions on the existence of probable cause is to be considered cumulatively." *United States v. Kiser*, 716 F.2d 1268, 1274 (9th Cir. 1983). And when all the other suspects and the evidence pointing towards them is considered together and viewed in the light most favorable to Plaintiff, the Court cannot find, as a matter of law, that there is no triable issue of material fact as to whether a magistrate would

[32] *See, e.g.*, *Aguirre*, 158 F.4th at 1307 ("[T]he suggestion of an alternative suspect does not, on its own, vitiate probable cause."); *Lebiedziński*, 2021 WL 5232735, at *9 ("[T]he mere existence of an unidentified or mixed DNA profile . . . does not erase the inculpatory inferences the Court has drawn from the presence of [the accused's] DNA in [another trace]."); *Knapp*, 2025 WL 2306534, *10 (The fact that another individual had sex with the victim on the night of the murder "does not change the fact that it was [the plaintiff's] DNA, not [the other suspect's], that was found on [the victim's] body.").

have found probable cause to arrest Plaintiff for Jinaga's murder,[33] especially when the crime was portrayed as a single-killer crime in the PC Cert.[34] The Court thus concludes that there is a genuine dispute of material fact as to whether a warrant would have been issued if these challenged omissions had been included in the PC Cert.

*Omissions and Misrepresentations Concerning the Bathrobe*. Plaintiff contends that the PC Cert is deficient because it omits "exculpatory facts related to the robe," such as the fact that the bathrobe typically hung on the back of the bathroom door and that Plaintiff had told police that he had used the bathroom earlier in the night. Dkt. # 284 at 11. Plaintiff also says that the PC Cert is misleading, as it states that Jinaga was "apparently wearing the robe when she was attacked[,]" despite no factual support for this proposition. *Id*. The Court agrees in part.

As for the missing exculpatory facts, the Court does not find that these facts, if included, would impact probable cause. As explained in the PC Cert, the bathrobe evidence is important because the item was initially located in the apartment, it was later discovered in the dumpster alongside other important evidence, and it had Jinaga's bloodstains on it. *See* Dkt. # 197 at 308. Additional facts about the bathrobe from before the murder, then, would not influence a

---

[33] *See, e.g.*, *Turngren*, 104 Wash. 2d at 308–09 (concluding that there is a genuine issue of material fact because the detectives failed to provide the magistrate with key context for the facts in the affidavit); *Chism*, 661 F.3d at 388–89 (concluding that a corrected version of the affidavit would not have supported a probable cause finding because "cumulatively, the omissions purged the affidavit of any reference to the possibility that someone other than [the plaintiff] was responsible"); *Zilinskas v. Cnty. of Monterey*, 2026 WL 370189, at *3 (N.D. Cal. Feb. 10, 2026) ("[b]alancing the limited value of [the] incriminating information" in the affidavit against "the weight of the potentially exculpatory evidence" and concluding that "it is plausible that the state court would not have issued a warrant for [the accused] if presented with the totality of the evidence").

[34] At oral argument, Defendants rejected the notion that it was a single-killer crime. *See* Dkt. # 289. This characterization, however, directly conflicts with the PC Cert's framing of the crime, as the PC Cert never suggests that there could be multiple killers and instead, repeatedly refers to "the killer" or "Jinaga's killer." *See generally* Dkt. # 197 at 301–08. Accordingly, the Court agrees with Plaintiff's argument: inclusion of evidence in the PC Cert that would increase the likelihood that another suspect was responsible for the murder would necessarily decrease the likelihood that Plaintiff was responsible, thereby reducing the amount of probable cause to arrest Plaintiff. *See generally* Dkt. ## 284 & 289.

magistrate's probable cause determination, as the bathrobe's evidentiary significance stems from its location and condition *after* the murder. Additionally, omitted evidence that tends to support an innocent explanation for Plaintiff's DNA on the bathrobe would not necessarily negate a probable cause finding, as innocent and alternative explanations do not negate probable cause where, as here, the officer's inference is reasonable.[35]

In contrast, the Court finds that the PC Cert's unsupported statement about Jinaga wearing the bathrobe when attacked is material.[36] Unlike the pre-murder bathrobe facts, this statement directly relates to the murder itself. And DNA found on the clothes that a victim is wearing when they are murdered is highly probative of criminal activity (and significantly more probative than DNA found on a random object in the victim's apartment). The Court thus concludes that there is a genuine dispute of material fact as to whether the PC Cert would still support a probable cause finding if this misstatement was corrected.[37]

*Omissions and Misrepresentations Concerning the Neck Swab.* Plaintiff contends that the PC Cert is deficient because it "omits that the DNA on the neck was a partial profile so trace it had to be sent to a specialized lab" and does not mention that "Fair simply could not be excluded as a match." Dkt. # 284 at 11. The Court agrees in part.

In raising these omissions, Plaintiff appears to be saying that the PC Cert misrepresents the strength of the DNA evidence that connects Plaintiff to the murder which in turn, affected the probable cause determination. But the PC Cert explicitly acknowledges that efforts to identify

---

[35] *See Wesby*, 583 U.S. at 61; *Graham*, 130 Wash. 2d at 725; *Knapp*, 2025 WL 2306534, at *11.

[36] At oral argument, Defendants conceded that there was no specific evidence to support the fact that Jinaga was wearing the bathrobe when murdered. *See* Dkt. # 289.

[37] *See, e.g.*, *Palacios*, 2022 WL 19241159, at *4 (denying summary judgment because there is a genuine factual dispute about the accuracy of a statement in the probable cause affidavit that speaks to a core fact in the case); *Worthy v. City of Berkeley*, 573 F. Supp. 3d 1398, 1407 (N.D. Cal. 2021), *order clarified*, 2021 WL 5758887 (N.D. Cal. Dec. 3, 2021) (denying summary judgment because "[t]he record as a whole reveals there are triable issues of disputed material facts that are central to the determination of probable cause").

the killer by DNA evidence "were hampered," and that the biological evidence at the crime scene was minimal. *See* Dkt. # 197 at 307. It also does not mention, let alone exaggerate, the extent of DNA evidence that connects Plaintiff to the neck swab. *See id.* at 308 (stating merely that "DNA profiles, consistent with . . . Fair's" link him to the neck swab). And Plaintiff does not contest the fact that his DNA did match the DNA on the neck swab, nor does he provide any support for the proposition that a probable cause affidavit must disclose the strength of DNA evidence to be valid. *See generally* Dkt. # 284; *see also* Dkt. # 289 (Plaintiff's counsel confirming that Plaintiff's DNA was linked to the neck swab and that probable cause affidavits do not need to discuss the strength of DNA evidence). The Court thus concludes that these omissions and misrepresentations, if viewed on their own, are not material.[38]

Omissions and misrepresentations in a probable cause affidavit, however, are not to be viewed on their own: they are to be considered cumulatively. *See Kiser*, 716 F.2d at 1274. And when viewed in the light most favorable to Plaintiff, the Court cannot find that the PC Cert would still support probable cause as a matter of law if it were updated to include these facts, in addition to the material facts concerning the bathrobe and other suspects discussed above.[39] The Court thus concludes that there is a genuine dispute of material fact as to whether these omitted facts would have impacted the magistrate's probable cause determination if they had been included in the PC Cert.

---

[38] *See, e.g.*, *Lebiedziński*, 2021 WL 5232735, at *9 ("[T]he mere existence of an unidentified or mixed DNA profile . . . does not erase the inculpatory inferences the Court has drawn from the presence of [the accused's] DNA in [another trace]."); *Knapp*, 2025 WL 2306534, at *1 ("[E]ven if the Court were to credit each of [the plaintiff's] contentions and re-write the affidavit to include them, there would still have been probable cause to issue the search and arrest warrants[,]" as the plaintiff's DNA was found on the body.).

[39] *See, e.g.*, *Zilinskas*, 2026 WL 370189, at *3 (concluding that a warrant may not have issued after "[b]alancing the limited value of [the] incriminating information" in the affidavit against all the excluded evidence).

*Omission of Photos*. Plaintiff contends that the PC Cert is deficient because it "omits that photo evidence showed Fair in close physical proximity or touching the victim during the crowded party." Dkt. # 284 at 11. The Court disagrees.

Although photo evidence of Plaintiff near Jinaga at the Halloween party would tend to demonstrate an innocent explanation for his DNA at the crime scene, such an explanation does not necessarily negate probable cause here because the officer's inference—that Plaintiff's DNA was on Jinaga's body, the gag portion of the duct tape, and the bathrobe because he murdered Jinaga—remains reasonable.[40] Additionally, while omitted photos may negate probable cause in some cases,[41] the omitted photos here may actually bolster probable cause, as they would tend to show that Plaintiff was in close physical proximity and touching Jinaga shortly before she was murdered. The Court thus finds that these omitted photos do not rebut Defendants' showing of probable cause.

*Omissions and Misrepresentations Concerning the Condom Wrapper*. Plaintiff contends that the PC Cert is deficient because it mentions a condom wrapper found in Leslie Potts's apartment the day after the Halloween party but fails to mention that: (1) Potts admitted that the condom wrapper was the same brand that she used; (2) Potts said that she did not know if the wrapper belonged to Plaintiff; (3) Potts never asked Plaintiff about the condom wrapper; (4) Potts told police that the wrapper could have been hers; (5) Potts did not mention the condom wrapper in her initial interviews; and (6) the crime scene was devoid of any condom-related evidence. Dkt. # 284 at 11. The Court disagrees.

---

[40] *See Wesby*, 583 U.S. at 61; *Graham*, 130 Wash. 2d at 725; *Knapp*, 2025 WL 2306534, at *11.

[41] *See, e.g.*, *Perkins*, 850 F.3d at 1122–23 (concluding that omission of a photo was material where: (1) the plaintiff was arrested for possession of child pornography; (2) the omitted photo was the allegedly pornographic image; and (3) the allegedly pornographic image was not actually pornography).

In raising these omissions, Plaintiff appears to be saying that the PC Cert is misleading because it unfairly suggests that Plaintiff used a condom on the night of the murder to have sex with Jinaga. But the PC Cert does not make this connection, as it does not provide any definitive evidence linking Plaintiff to the condom wrapper, nor does it provide any definitive evidence linking the condom from said wrapper to Jinaga's murder. *See generally* Dkt. # 197 at 301–08. Instead, the PC Cert merely states that Potts told police that "she saw an empty condom package on her kitchen table[,]" that the wrapper had not been there the night before, that "she did not have intercourse with anyone that night," and that "she assumed that Fair had had intercourse with someone." *Id*. at 307.

It is thus clear from the PC Cert that: (1) the condom wrapper was not clearly identified as Plaintiff's; (2) the police did not recover any notable condom-related evidence from the crime scene; and (3) Plaintiff's purported connection to the condom wrapper is based on Potts's assumption, not any direct knowledge. Adding these purportedly missing facts would thus have no material impact on the probable cause determination, as it would merely affirm these propositions rather than change the description of the condom wrapper evidence. Likewise, nothing in the record (or in Plaintiff's Response) suggests that the PC Cert's description of Potts's statements concerning the condom wrapper is fabricated or otherwise untrue. *See generally* Dkt.; *see also* Dkt. # 284. The Court thus finds these challenged omissions and misrepresentations concerning the condom wrapper to be unnecessary, and thus immaterial, to the magistrate's probable cause determination.

*Omissions and Misrepresentations Concerning Plaintiff's Phone Calls*. Plaintiff contends that the PC Cert is deficient because it contains a misleading description of his phone activity on the night of the murder. Dkt. # 284 at 12. He says that the PC Cert implies that he lied about making phone calls, as it states that he told the police about a single call to his

"homeboy" while omitting the fact that he (eventually) told the police that he made various calls that night, including to women. *Id*. Plaintiff also says that the PC Cert is misleading because it contains an "ominous" description of a voicemail that a witness received from Plaintiff that night, even though the witness had described it as a "pocket dial." *Id*. The Court disagrees.

As explained by Defendants, and also presented in the PC Cert, Plaintiff's phone calls on the night in question are relevant to the probable cause determination because: (1) Plaintiff did not disclose that he made these calls during his initial interviews; and (2) Plaintiff's phone records directly contradicted his statements to police about what he was doing during those hours. *See* Dkt. ## 277 at 11–12; 197 at 306–07. The PC Cert also mentions Plaintiff's innocent explanation for the calls—that he must have dialed various numbers by accident while he was sleeping. *Id*. at 307. And while the PC Cert omits the phrase "pocket dial," Plaintiff has not actually shown that the PC Cert's description of the voicemail in question—that it was a "long recorded 'voice mail' in which no words were spoken but during which [the witness] could hear constant movement, as if the caller had inadvertently dialed her number while engaged in some sort of continuous physical activity[,]" *see id*.—is factually incorrect or otherwise contradicted by the witness's account to police. *See generally* Dkt. # 284. The Court thus does not find these purported omissions and misrepresentations to be material, and so it declines to find want of probable cause on this basis.

* * *

In sum, the Court finds that there is a genuine issue of material fact as to whether a discussion of the other suspects and the extent of evidence against them in the PC Cert would have affected the magistrate's probable cause determination. It also finds that there is a genuine dispute of material fact as to whether a correction to the PC Cert's description of Jinaga wearing the bathrobe at the time of her death would negate probable cause. And it further finds that there

is a triable issue of fact as to whether the PC Cert would still support probable cause if these material omissions and misrepresentations, as well as those concerning the neck swab, were corrected and then considered cumulatively.

Because of this, the Court finds that, when viewed in the light most favorable to Plaintiff, Plaintiff has shown that there were material misrepresentations and omissions in the PC Cert that "cast doubt on the existence of probable cause." *Ewing*, 588 F.3d at 1226 (citation omitted). Accordingly, Plaintiff has affirmatively rebutted Defendants' showing that probable cause existed as a matter of law to arrest Plaintiff for the murder of Jinaga. The Court thus denies Defendants' request to grant summary judgment on probable cause,[42] and therefore denies Defendants' request to grant summary judgment against Plaintiff on his malicious prosecution and judicial deception claims against King County and the City of Redmond.[43]

## IV
## CONCLUSION

For these reasons, the Court DENIES Defendants' Joint Motion for Summary Judgment (Dkt. # 277).

---

[42] The Court notes that this Order is consistent with the Ninth Circuit's rulings in the Appeal. As stated by the Ninth Circuit, Defendants have made a "strong showing that they are likely entitled to qualified immunity based on the existence of probable cause." Dkt. # 254 at 2; *see also* Appeal Dkt. # 76 at 2. This "strong showing" is acknowledged in this Order and reflected in the Court's conclusion that the PC Cert, when viewed in isolation, supports probable cause to arrest Plaintiff for the murder of Jinaga. *See* part III(B) above. The Ninth Circuit, however, has yet to opine on whether Plaintiff has provided sufficient evidence to raise a genuine issue of material fact as to whether a corrected PC Cert would no longer support probable cause. *See* Appeal Dkt. The Court thus views its conclusion—that probable cause has not been established as a matter of law *because of* Plaintiff's rebuttal evidence—to be consistent with the Ninth Circuit's conclusion that Defendants' have made a "strong showing" that probable cause existed at the time of the arrest.

[43] The Court has already rejected Defendants' other summary judgment arguments as to Plaintiff's malicious prosecution and judicial deception claims, *see* Dkt. # 224 at 57–58, and such arguments are also beyond the scope of this Order. *See* part II above.

The Court provisionally files this Order under seal. The Court DIRECTS the parties file a joint statement, on or before June 1, 2026, indicating what redactions, if any, should be included in the public version of the Order.

Dated this 18th day of May, 2026.

John H. Chun
United States District Judge